RICHARD H. HONAKER, Wyo. State Bar No. 5-1514
Honaker Law Offices, LC
P.O. Box 366
Rock Springs, WY 82902-0366
Telephone: (307) 362-5800
Facsimile: (307) 362-5890
E-mail: info@honakerlaw.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 16 2017
11:45 a.m.
Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

JOSHUA C. SIMMS,
NATHAN HOLCOMB, and
CHELSEA HOLCOMB,

      Plaintiffs,

vs.

METROPOLITAN LIFE INSURANCE
COMPANY, and THE KROGER CO.,

      Defendants.

Case No. 17CV187-S

## ERISA COMPLAINT FOR ACCIDENTAL DEATH BENEFITS

COME NOW the above-named Plaintiffs, by and through their undersigned counsel, and state the following facts constituting their claims for relief against the above-named Defendants.

1.    Plaintiff Joshua C. Simms is a citizen of the State of Idaho, residing in Bonneville County, Idaho.

2. Plaintiffs Nathan Holcomb and Chelsea Holcomb are citizens of the State of Wyoming, residing in Teton County, Wyoming.

3. Defendant Metropolitan Life Insurance Company ("MetLife") is an insurance company incorporated in the State of New York, and doing business in the State of Wyoming.

4. Defendant The Kroger Co. ("Kroger") is a retail food company incorporated in the State of Ohio, and doing business in the State of Wyoming.

5. Plaintiffs' claims are brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461. Jurisdiction and venue are proper in this Court pursuant to 29 U.S.C. § 1132(a)(1)(B) and § 1132(e)(1) and (2). In addition, federal question jurisdiction exists under 28 U.S.C. 1331(a), and diversity jurisdiction exists under 28 U.S.C. 1332(a).

6. At the time of his death on February 27, 2013, Roger A. Holcomb ("Mr. Holcomb") was employed by Defendant Kroger as a pharmacist at Smith's Food & Drug Center ("Smith's") in Jackson, Teton County, Wyoming, and was a participant in The Kroger Co. / 105190 Voluntary Accidental Death Plan (the "Plan").

7. The Plan is an employee welfare benefit plan regulated by ERISA, and MetLife is the administrator of the Plan.

8. As a Plan participant, Mr. Holcomb regularly paid all required premiums for the Plan, and Plaintiffs were designated by Mr. Holcomb as his beneficiaries under the Plan.

9. As administrator of the Plan, MetLife was a fiduciary as defined by ERISA, and was required by 29 U.S.C. § 1104(a) to discharge its duties with respect to the Plan solely in the interests of the Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the Plan.

10. The Plan provides in pertinent part: "If You or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When we receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury."

11. The insurance in effect on the date of the injury was $575,000.00.

12. The Plan defines "Direct and Sole Cause" as "that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes."

13. The Plan contains an exclusion that provides, "We will not pay benefits under this section for any loss caused or contributed to by…physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity."

14. The Plan does not define "illness" or "infirmity".

15. Mr. Holcomb was born with a Factor V Leiden mutation, a mutation of one of the clotting factors in the blood called Factor V. The congenital condition resulting from a Factor V Leiden mutation is called hereditary thrombophilia, which can increase a person's chances of developing abnormal blood clots, usually in the veins.

16. Factor V Leiden is the most common inherited form of thrombophilia, and is carried by between three and eight percent of all persons of European ancestry, which would include Mr. Holcomb. Hereditary thrombophilic states are present in approximately 20 percent of the population of the United States.

17. Neither a Factor V Leiden mutation or hereditary thrombophilia is an illness or infirmity.

18. In 2002 Mr. Holcomb had a deep vein thrombosis (DVT) in his left leg that was treated with Coumadin (warfarin), an anti-coagulant. Because it was a one-time clot, his physician took him off the Coumadin at that time. But in 2003, Mr. Holcomb developed a second left leg DVT and pulmonary emboli. He was treated with two anti-coagulants – Coumadin and Lovenox. Since 2003, Mr. Holcomb continuously remained on long-term Coumadin, and his international normalized ratio (INR) was regularly monitored by his family physician.

19. Millions of Americans take anti-coagulants on a regular basis.

20. Mr. Holcomb did well on anti-coagulants. In addition to working full time, his interests included photography, hunting big game, halibut-fishing in Alaska, and working on his mountain home in Idaho. He led an active, outdoors-oriented life. He traveled extensively throughout the United States, Canada, and Africa. He was not ill or infirm.

21. On Thursday evening, February 21, 2013, Mr. Holcomb told a family member that he had accidentally fallen that afternoon while shoveling snow off the front steps of his home. He reported that, as he went down the steps, he accidentally slipped and fell and crashed backwards into the steps.

22. Mr. Holcomb stayed home until reporting for work at Smith's on Saturday, February 23, 2013, at 8 a.m. At about 8:30 a.m., he passed out and was rushed to the emergency room at St. John's Medical Center in Jackson, Wyoming, where he was admitted.

23. At the time of his fall, and at the time of his admission to St. John's, Mr. Holcomb was anti-coagulated on Coumadin (warfarin). Since 2003, being anti-coagulated was Mr. Holcomb's normal, healthy state.

24. At St. John's, Mr. Holcomb was diagnosed with a large left-sided retroperitoneal hematoma, with about 800 to 1,000 ml of volume noted by CT, as well as transverse process lumbar vertebrae fractures, all "related to trauma when the patient fell on his back the day prior to admission," according to the hospital chart.

25. Upon admission, Mr. Holcomb was taken off Coumadin. At that time his international normalized ratio (INR) was 2.7. An anti-coagulant dosage is therapeutic between readings of 2.0 and 4.0.

26. Mr. Holcomb stayed in the ICU for about 36 hours, and was then transferred to a regular patient room. He was started back on anti-coagulant therapy on the morning of February 25, 2013, and his INR was measured at 2.1 that afternoon. He was held in the hospital for observation for more than 24 hours following resumption of anti-coagulants, and then was discharged from the hospital on the afternoon of February 26, 2013. At that time his treating physician determined his condition to be stable.

27. Upon his discharge, physicians at St. John's had returned Mr. Holcomb to the normal, healthy anti-coagulated state in which he had presented, albeit still stiff and sore from the injuries sustained in the accidental fall and taking pain medications.

28. Mr. Holcomb arrived home at about 5:30 p.m. on February 26, 2013. He lived alone. Mr. Holcomb last talked with someone by telephone on February 27, 2013 at about 9 p.m. According to his death certificate, Mr. Holcomb died on February 27, 2013 between 10 p.m. and 11 p.m. He was found dead and pronounced dead at about 1 p.m. on February 28, 2013.

29. An autopsy was performed on March 2, 2013 at Valley Mortuary in Jackson, Wyoming. The pathologist identified and reported a "massive fresh retroperitoneal hematoma" with a total volume of approximately 4,000 cc. "This hemorrhage extends around the left kidney and appears to emanate from the area around the left lumbar spine with the recently fractured vertebral transverse processes," the pathologist reported. The autopsy established that the same bleed that was caused by Mr. Holcomb's accidental fall re-bled and caused Mr. Holcomb's death.

30. The autopsy report stated the sole cause of death as follows:

"I. Massive recurrent retroperitoneal hemorrhage (approximately 4,000 cc), left predominant

A. Status post recent hospital discharge following traumatic injury to left flank (clinical)

B. Fractured left lumbar vertebral transverse processes (clinical)

C. Previous retroperitoneal hematoma, 800 to 1000 cc (clinical)

D. Pulmonary congestion and edema, bilateral, consistent with terminal circulatory collapse."

31. Four "comorbidity factors", were reported in the autopsy report:

"1. External evidence of injury.
2. Atherosclerotic coronary vascular disease.
3. Atherosclerotic peripheral vascular disease.
4. Hereditary thrombophilia from Factor V Leiden mutation."

32. Co-morbidity factors are not causes of death.

33. Following receipt of the autopsy report, the Bonneville County Coroner prepared and signed an Idaho death certificate, in which the immediate cause of death was reported to be "a massive retro-peritoneal hemorrhage – left side, due to, or as a consequence of, a fall." The death certificate indicates an interval of "days" between the fall and the death. In describing how the injury occurred, the coroner recorded, "Decedent slipped and fell on exterior stairs while shoveling snow."

34.  The death certificate form also required the coroner to enter "other significant conditions contributing to death but not resulting in the underlying cause." The coroner entered, "Anticoagulation therapy for hereditary thrombophilia, coronary vascular disease." Neither condition was reported in the death certificate as a cause of death.

35.  As Mr. Holcomb's beneficiaries, Plaintiffs timely filed a claim for accidental death benefits under the Plan with MetLife.

36.  By letter dated May 29, 2013, attached hereto as Exhibit 1, MetLife denied Plaintiffs' claim.

37.  Plaintiffs timely filed with MetLife an appeal of MetLife's denial of the claim.

38.  By letter dated September 16, 2013, attached hereto as Exhibit 2, MetLife upheld denial of the claim, advising Plaintiffs, "You have the right to bring a civil action under Section 502(a) of ERISA."

39.  All conditions precedent under the Plan have been satisfied, and Plaintiffs have exhausted their administrative remedies under the Plan.

40.  Defendants have improperly denied accidental death benefits to Plaintiffs under the Plan. Mr. Holcomb paid the premiums for those benefits, and he sustained an accidental injury that directly and solely caused his death. Plaintiffs are contractually entitled to those benefits, plus interest, because the benefits are permitted benefits under the Plan, and Plaintiffs have satisfied all conditions precedent to be eligible to receive the benefits.

41. By improperly denying accidental death benefits to Plaintiffs under the facts and circumstances of their claim, Defendant MetLife breached its fiduciary duty to Plaintiffs under 29 U.S.C. 1104(a).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1. That the Court review the denial of benefits in this case and declare that Plaintiffs are entitled to voluntary accidental death benefits under the Plan, and to interest on those benefits.

2. That the Court award Plaintiffs all other damages and remedies allowable under ERISA, consistent with the allegations contained in this Complaint, including all damages recoverable for breach of fiduciary duty under 29 U.S.C. § 1104(a).

3. That the Court award Plaintiffs their reasonable attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

4. That the Court award Plaintiffs such other and further relief as the Court deems just and equitable.

DATED this 9th day of November, 2017.

_/s/ Richard Honaker_
RICHARD H. HONAKER
Attorney for Plaintiffs
Honaker Law Offices, LC
P.O. Box 366
Rock Springs, WY  82902-0366
Telephone:  (307) 362-5800
Facsimile:  (307) 362-5890